IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
June 24, 2002 Session

# MARY TREW, d/b/a TREW'S WRECKER SERVICE v. DAVID B. HAGGARD, SHERIFF

Appeal from the Circuit Court for Roane County
No. 11958     Russell E. Simmons, Jr., Judge

FILED JULY 25, 2002

No. E2001-02183-COA-R3-CV

Trew's Wrecker Service and the Roane County Sheriff's Department entered into an oral contract regarding towing and storage services for vehicles seized by the Sheriff's Department in drug interdiction and DUI enforcement matters. The parties dispute many of the terms of the oral contract, including how much Trew's Wrecker Service was to be paid for towing and storage and when the Sheriff's Department was required to hold a sale of the seized vehicles in order to clear the wrecker service lot. Mary Trew, d/b/a Trew's Wrecker Service ("Plaintiff"), sued the Roane County Sheriff's Department and Sheriff David B. Haggard ("Defendants") for "breach of contract, and benefits conferred." The Trial Court awarded damages based upon a $45 per vehicle towing and storage charge for 83 vehicles. Plaintiff appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded.**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, J., and CHARLES D. SUSANO, JR., J., joined.

Gerald Largen, Kingston, Tennessee, for the Appellant, Mary Trew, d/b/a Trew's Wrecker Service.

Tom McFarland, Kingston, Tennessee, for the Appellees, David B. Haggard, Sheriff, and Roane County, Tennessee.

**OPINION**

## Background

This lawsuit involves a dispute over an oral contract regarding vehicle towing and storage services. Sometime in 1996, Freddy Trew, the late husband of Mary Trew and the previous owner and operator of Trew's Wrecker Service, approached the Roane County Sheriff's Department about providing towing and storage services for vehicles seized by the Sheriff's Department in drug interdiction and DUI enforcement matters. The proof in the record shows the parties sharply dispute the terms of the oral contract. The parties do agree that Plaintiff was not to receive any payment from the Sheriff's Department until it sold the seized vehicles.

Freddy Trew ("Trew") testified, by deposition, that he proposed to Sheriff's Deputy Dennis Worley that Trew would tow the seized vehicles for Defendants for a fee of $100 and that no later than 30 days after the vehicles were towed, Defendants would sell the vehicles. Trew testified he and Worley did not discuss what would happen if the vehicles were not sold after 30 days and that the two never discussed charges for the storage of seized vehicles after the expiration of the initial 30-day storage period. Trew testified he charged a storage fee of $10 per day per vehicle after the expiration of the initial 30-day period. Trew testified he did not discuss the terms with Sheriff David Haggard but that Sheriff Haggard must have agreed to his terms because a few days after his discussion with Worley, Trew began towing cars for Defendants.

Ron Ivey, a friend who assisted Trew with the wrecker service, corroborated Trew's account of the contract terms. Ivey also testified he owned a "rollback" wrecker truck and used it to haul 85% of the seized vehicles. Ivey testified he received $50 from Trew's Wrecker Service for every seized vehicle he towed with his rollback truck. Plaintiff, Mary Trew, Freddy Trew's widow, testified she had no personal knowledge of the terms of the agreement. Plaintiff testified Freddy Trew handled their wrecker service business when the contract was negotiated in 1996. Plaintiff testified she later operated the business after her husband became too ill to do so. Freddy Trew was deceased when the case was tried in early 2001.

Deputy Worley testified he and Trew initially discussed Trew's proposal but that, thereafter, Trew discussed the matter with Sheriff Haggard. Sheriff Haggard testified Freddy Trew represented to him that Trew's Wrecker Service would give a better deal to the Sheriff's Department than it was receiving at that time for the same service from a third party, Golston's Wrecker Service. Haggard testified Golston's charged a $100 towing fee with no storage fee. Sheriff Haggard testified he and Freddy Trew agreed to the following terms: 1) Trew would tow seized vehicles for a fee of $45-$65, depending on the difficulty and location of the towing job; 2) Trew would tow any county vehicle for no charge; 3) Trew would not charge any storage fees; and 4) Trew would make the stored vehicles available on a 24-hour basis.

Sheriff Haggard testified 3 events had to occur before the vehicles could be sold: (1) the vehicles had to be cleared by the State Department of Safety; (2) the Department of Safety had to release the vehicles to the Sheriff's Department which then could choose either to use the vehicles or sell the vehicles; and (3) the Sheriff's Department had collected enough vehicles in storage to

warrant holding a sale of the vehicles. Furthermore, the record shows Worley testified he informed Trew that it sometimes took several years before the Sheriff's Department could accumulate enough seized vehicles to make it cost-effective to have a sale of the vehicles. Worley also testified he told Trew he intended to collect between 40 and 50 vehicles before having a sale.

The record on appeal shows that from 1996 to mid-1998, Trew towed and stored on the wrecker service's storage lot approximately 80 vehicles that had been seized by the Sheriff's Department. Trew testified that on several occasions and without success, he requested that the Sheriff's Department have a sale so that the storage lot could be cleared. The record shows the Sheriff's Department never held a sale of any of the vehicles and did not begin removing the vehicles from the storage lot until November 2000, over 1 year after the Complaint was filed. When the trial began in January 2001, 2 seized vehicles remained on the storage lot.

The proof in the record shows that the business relationship between Trew and Sheriff Haggard deteriorated in 1998. The record shows Trew requested a bonded deputy card and a police radio number from Sheriff Haggard. Sheriff Haggard testified he refused this request because Trew had a previous federal felony conviction for mail fraud. Also occurring in 1998 was the Roane County Sheriff's election. Trew testified he supported a candidate other than Sheriff Haggard. Trew also testified he changed the locks on the storage yard and did not provide new keys to the Sheriff's Deputies. Thereafter, Sheriff Haggard, who won the 1998 election, removed Trew's Wrecker Service from the list of wrecker services used by the Sheriff's Department.[1]

Worley and Scarbrough testified they attempted to enter Plaintiff's storage yard sometime in late 1998 to take an inventory of the seized vehicles so that the Sheriff's Department could hold a sale of the vehicles. Trew denied the deputies access to the lot and told them to contact his attorney. The Trial Court found that no proof was presented at trial regarding what action was taken between the time the deputies were denied access in late 1998 and when Plaintiff filed the Complaint in September 1999.

Plaintiff's complaint alleged Defendants were liable for "breach of contract, and benefits conferred" and sought damages for towing and storage fees. Thereafter, Defendants filed an Answer and a Counter-Complaint against Plaintiff, alleging that Plaintiff had breached the parties' contract by refusing Defendants access to the vehicles.

The Trial Court bifurcated the trial. The first hearing dealt with the terms of the parties' oral contract while the second hearing dealt with the issue of damages. In addition to the parties and the above-mentioned witnesses, an attorney for the State Department of Safety, Joe Bartlett, testified about the procedure used by local law enforcement agencies for the sale of vehicles seized in drug interdiction or DUI matters. Bartlett testified that because of cost concerns, it is

---

[1] Haggard testified he removed Trew's Wrecker Service from the list of wrecker services used by the Sheriff's Department because of complaints he received from the owners of seized vehicles regarding high wrecker bills and difficulty in retrieving their vehicle from Trew's storage lot.

common practice for county law enforcement agencies to wait until they have a full lot of seized vehicles before holding a sale. Moreover, Bartlett testified the Department of Safety recommends to local law enforcement agencies to contract with wrecker services that do not charge storage fees.

The Trial Court entered a Judgment which contained its findings from both hearings. In the Judgment, the Trial Court awarded Plaintiff damages in the amount of $3,735 based upon $45 per vehicle for towing for 83 vehicles, plus some prejudgment interest, and denied Plaintiff further recovery for storage. The Trial Court, in the portion of the Judgment regarding the first hearing, stated, in pertinent part, as follows:

> The Court finds from the evidence that the Plaintiff through its agent Freddy Trew, entered [sic] an oral contract with the Defendant David B. Haggard in his official capacity as Sheriff of Roane County. *The Court finds that the terms of the contract were that the Plaintiff was to tow vehicles seized by the Roane County Sheriff's office to this property to be kept there until the Sheriff could sell the seized vehicles.*
>
> From the evidence the Court cannot find that the Plaintiff agreed to keep the vehicles forever but that the vehicles would be kept until they could be sold. *The parties agree that the fee for the towing and storage until the sale was to be between forty-five and sixty-five dollars depending on the difficulty in getting the vehicle to the lot. . . .* The Plaintiff's position is that the parties agreed to a storage fee after thirty days, however, Freddy Trew testified in his own deposition that he never discussed storage with the Defendant or its agents and *the Court finds that the Plaintiff has failed in its burden of proof that storage was to be paid immediately beginning the thirty days after the vehicle was towed. . . .*

(emphasis added).

The portion of the Judgment regarding the second hearing is composed of a transcript of the Trial Court's findings of fact and conclusions of law it made from the bench. In the second portion of the Judgment, the Trial Court stated that it found, after the first hearing, the "parties had no agreement that storage would be paid, but they had agreed that the vehicles would be stored until they could be sold." As discussed, the portion of the Judgment regarding the Trial Court's findings after the first hearing provided that Plaintiff failed to prove that the parties agreed that Defendants would pay storage after the intitial 30-day storage period. The first portion of the Judgment, however, also provided that the parties agreed on a price of $45-$65 per vehicle for towing *and* storage. A reading of the Judgment, in its entirety, shows the Trial Court found the parties agreed to a fee of between $45-$65 per vehicle for towing and storage, depending upon the difficulty of the tow, and that the parties did not agree to any additional fee for storage.

-4-

The Trial Court, in the second portion of the Judgment, also discussed when the vehicles could have been sold by Defendants in making its determination that Defendants did not breach the contract by failing to pay additional storage. The record shows the Trial Court, in determining when the vehicles could have been sold by Defendants, relied heavily upon the testimony of Department of Safety Attorney Joe Bartlett. The Trial Court found that once the State Department of Safety issues a release of the vehicle, a law enforcement agency has to wait 60 days for the vehicle owner's appeal time before the vehicle can be sold. The Trial Court held there was no specific time set by statute or administrative rule regarding when the sale of the seized vehicles should take place once the 60-day appeal time expired and found that the time for the sale was left to the discretion of each law enforcement agency to determine when it would be most cost-effective. The Trial Court found the proof showed it was more cost-effective for a law enforcement agency to sell a large number of cars at one time.

In addition, the Trial Court found that between May 1997 and August 1998, approximately 45 vehicles in the wrecker service's storage lot were released for sale by the State Department of Safety. The Trial Court further found Defendants, in September 1998, attempted to obtain the release of the stored vehicles from Freddy Trew so the vehicles could be sold but that Freddy Trew refused to allow Defendants access to the vehicles. The Trial Court also found that in 1998, Plaintiff demanded payment of storage fees from Defendants. The Trial Court found it was not unreasonable for Defendants to wait until September 1998 to hold a sale of the vehicles. The Trial Court concluded Defendants did not breach the contract by failing to pay Plaintiff additional storage fees and also found that Plaintiff had a duty to mitigate damages by releasing the vehicles to Defendants but that Plaintiff had failed to do so.

Plaintiff appeals.

## Discussion

On appeal and although not exactly stated as such, Plaintiff raises the following issues for this Court's consideration: (1) whether the Trial Court erred in finding that, under the oral contract, Plaintiff was to receive $45-$65 per vehicle for towing and storage; (2) whether the Trial Court erred in failing to award, under the oral contract, additional damages to Plaintiff for storage of the seized vehicles; (3) whether Plaintiff is entitled to recover additional storage fees under quantum meruit; and (4) whether Defendants' failure to pay Plaintiff storage fees violated the United States and Tennessee Constitutions. Defendants do not dispute the Judgment and contend the evidence contained in the record on appeal does not preponderate against the Trial Court's findings of fact.

Our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the Trial Court, unless the preponderance of the evidence is otherwise. Tenn. Rule App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A Trial Court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *Southern Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

The Trial Court held the parties had an enforceable oral agreement, and neither party, on appeal, disputes this holding. Plaintiff, as the party seeking to enforce the parties' oral contract, had the burden of proving the terms of the contract. *CPB Mgmt., Inc. v. Everly*, 939 S.W.2d 78, 82 (Tenn. Ct. App. 1996).

Plaintiff's first issue on appeal concerns the Trial Court's findings regarding the terms of the parties' oral agreement. Plaintiff contends the Trial Court erred in finding the parties agreed that Trew's Wrecker Service for $45-$65, depending on the difficulty of the towing job, would tow and store the seized vehicles until they could be sold. Plaintiff argues the proof establishes the parties agreed upon a fee of $100 per car for towing and storage for the first 30 days and points to Freddy Trew's and Ron Ivey's testimony. Plaintiff contends the Trial Court should have been more skeptical of the testimony of Defendants' witnesses and that Trew's and Ivey's testimony was more credible.

The testimony contained in the record shows that the parties' versions of the terms of the oral contract differ, and accordingly, the Trial Court, in making its findings regarding the terms of the oral contract, had to determine which side was more credible. Freddy Trew, who was deceased at the time of trial, did not provide live testimony but instead, gave deposition testimony. This Court's review of deposition testimony submitted at trial differs from our review of testimony of witnesses who testified at trial. "[A]ppellate courts may make an independent assessment of the credibility of the documentary proof it reviews, without affording deference to the trial court's findings." *Wells v. Tennessee Bd. of Regents*, 9 S.W.3d 779, 783-84 (Tenn. 1999). "This rule is premised on the fact that appellate courts are in just as good a position as the trial court to judge the credibility of witnesses who provided the proof." *Id.* In contrast, the Trial Court's determinations of the credibility of witnesses who testified at trial are afforded deference by this Court since the Trial Court "observed the manner and demeanor of the witnesses and was in the best position to evaluate their credibility." *Union Planters Nat'l Bank v. Island Mgmt. Auth., Inc.*, 43 S.W.3d 498, 502 (Tenn. Ct. App. 2000). "[A]ppellate courts will not re-evaluate a trial judge's assessment of witness credibility absent clear and convincing evidence to the contrary." *Wells v. Tennessee Bd. of Regents*, 9 S.W.3d at 783.

With respect to the amount Trew's Wrecker Service was to be paid for towing and storage, the Judgment shows the Trial Court found Defendants' witnesses to be more credible than Plaintiff's witnesses. The record shows Sheriff Haggard and Worley testified the parties agreed upon a fee of $45-$65 per car. The record also shows Sheriff Haggard testified Freddy Trew told him he would give the Sheriff's Department a better deal than it was receiving from Golston's Wrecker Service which charged $100 per tow and no storage fee. Moreover, while we may make our own determination of Freddy Trew's credibility, we afford deference to the Trial Court's assessment of credibility of the remaining witnesses. Based on the record before us and the deference we afford the Trial Court's determinations of credibility, we hold the evidence does not preponderate against the Trial Court's finding that the parties agreed upon a fee of $45-$65 per vehicle for towing and storage until the vehicles could be sold.

Plaintiff also contends the Trial Court erred in finding that Plaintiff was not entitled to receive additional damages for storage of the seized vehicles because of Defendants' delay in selling the vehicles. The Trial Court, as discussed, found Freddy Trew did not agree to store the vehicles indefinitely but did agree to store the vehicles until the vehicles could be sold. The Trial Court also found Defendants did not breach the oral contract by failing to pay Plaintiff additional storage fees due to their failure to hold a sale of the vehicles. The Trial Court held it was not unreasonable for Defendants to wait until September 1998 to have a sale and that Freddy Trew refused Defendants access to the vehicles. While not specifically stated as such in the Judgment, the Trial Court essentially found that Defendants' performance of their duty, under the oral contract, to sell the seized vehicles was not due until Defendants determined they had enough vehicles to justify holding a sale. *See* Restatement (Second) of Contracts § 235 cmt.b (1981) (holding "[n]on-performance is not a breach unless performance is due"). We hold the evidence does not preponderate against this finding in light of the evidence contained in the record before us, including Department of Safety Attorney Bartlett's testimony regarding procedures and practices used by state agencies in the sale of seized vehicles. Moreover, the relevant statute, Tenn. Code Ann. § 53-11-201, which discusses the procedure to be used in the confiscation of vehicles involved in drug seizures, does not specify a time that local law enforcement agencies should hold a sale of seized vehicles once the vehicles are released by the Department of Safety.[2] In addition, Freddy Trew testified he and Deputy Worley never discussed the issue of whether Trew's Wrecker Service would charge a storage fee after the initial 30-day storage period. Futhermore, Sheriff Haggard and Deputy Worley both testified Freddy Trew agreed there would be no storage fee charged. Accordingly, we find no error with the Trial Court's determination that Plaintiff was not entitled to an award of additional storage fees under the parties' oral contract.

---

[2] Tenn. Code Ann. § 53-11-201(b) provides, in pertinent part, as follows:

> (1) All such property seized and forfeited under the provisions of this chapter shall be sold at public sale by the commissioner of general services when seized by an agency of the state or, if seized by a county or municipality, by the seizing agency of the county or municipality when the same has been released by the commissioner of safety as now authorized by law.
>
> (2)(A) However, any vehicle, seized by an agency of the state, and forfeited under the provisions of this chapter may, with the permission of the commissioner of safety and under such terms and conditions as are approved by the commissioner of safety, be used, for a period of time not to exceed one (1) year, in the drug enforcement program of the state. . . .
>
> (C) Notwithstanding the provisions of subdivision (b)(2)(B) to the contrary, any vehicle seized by a county or municipal agency and forfeited under [Tenn. Code Ann. § 40-33-201, *et seq.*] may be used in the local drug enforcement program for a period not to exceed five (5) years.

In addition, Tenn. Code Ann. § 40-33-211 provides how proceeds from sales of seized vehicles involved in drug and DUI interdiction are to be distributed.

Next, Plaintiff contends the Trial Court erred in failing to award additional storage fees under a quasi-contract theory, quantum meruit. Courts may impose a quasi-contractual obligation where a contract is invalid or unenforceable and where the opposing party would otherwise be unjustly enriched by his receipt of goods or services. *Doe v. HCA Health Serv. of Tennessee, Inc.*, 46 S.W.3d at 197. Discussing quantum meruit, our Supreme Court held as follows:

> "A quantum meruit action is an equitable substitute for a contract claim pursuant to which a party may recover the reasonable value of goods and services provided to another if the following circumstances are shown:
>
> (1) *There is no existing, enforceable contract between the parties covering the same subject matter*;
>
> (2) The party seeking recover proves that it provided valuable goods or services;
>
> (3) The party to be charged received the goods or services;
>
> (4) The circumstances indicate that the parties to the transaction should have reasonably understood that the person providing the goods or services expected to be compensated;
>
> (5) The circumstances demonstrate that it would be unjust for a party to retain the goods or services without payment."

*Id.* at 198 (emphasis added) (quoting *Swafford v. Harris*, 967 S.W.2d 319, 324 (Tenn. 1998)).

The parties do not dispute they have an existing and enforceable oral contract which covers the same subject matter at issue, that is, wrecker services provided by Plaintiff to Defendants. While Freddy Trew's testimony shows his frustration with Defendants over having to store approximately 80 seized vehicles for approximately 4 years, Plaintiff is not entitled to recovery of damages under a quasi-contract theory since the parties have an existing and enforceable contract which covers the same subject matter. *See id; see also Jaffe v. Bolton*, 817 S.W.2d 19, 26 (Tenn. Ct. App. 1991) (quoting 17 C.J.S. *Contracts* § 6 (1963) ("Although the results in this case may be harsh, the 'quasi-contractual principle of unjust enrichment does not apply to an agreement deliberately entered into by the parties, however harsh the provisions of such contract may seem in the light of subsequent happenings'")). Accordingly, Plaintiff is not entitled to recovery of storage fees under a quantum meruit theory. *See Durnelco, Inc. v. Double James, L.L.C.*, No. E2001-02010-COA-R3-CV, 2002 Tenn. App. LEXIS 450, at * 18-19 (Tenn. Ct. App. June 26, 2002), *no appl.*

*perm. app. filed,* (holding that plaintiff could not recover damages under quantum meruit because the parties had a written contract which covered the subject matter at issue).[3]

Plaintiff's last issue on appeal concerns the challenges she raises under the United States and Tennessee Constitutions, arguing that she is entitled to just compensation for the Defendants' use of the storage lot. *See* U.S. Const. amend. V; Tenn. Const. art. I, § 21. We decline to decide this issue for two reasons. First, under Tennessee law, "courts do not decide constitutional questions unless resolution is absolutely necessary for determination of the case and the rights of the parties." *Owens v. State*, 908 S.W.2d 923, 926 (Tenn. 1995). Courts should avoid deciding constitutional matters if the case can be resolved on non-constitutional grounds. *Id.* As we have already affirmed the Trial Court's Judgment on non-constitutional grounds, we decline to decide this issue. Second, the record on appeal shows Plaintiff did not raise this issue at the trial level and is raising it for the first time on appeal. This Court will not entertain issues raised for the first time on appeal, even constitutional issues "'unless the statute involved is so obviously unconstitutional on its face as to obviate the necessity for any discussion.'" *In re Adoption of E.N.R.,* 42 S.W.3d 26, 33 (Tenn. 2001) (quoting *Lawrence v. Stanford*, 655 S.W.2d 927, 929 (Tenn. 1983)). Accordingly, Plaintiff's constitutional issue is pretermitted.

## Conclusion

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for such further proceedings as may be required, if any, consistent with this Opinion and for collection of the costs below. The costs on appeal are assessed against the Appellant, Mary Trew, d/b/a Trew's Wrecker Service, and her surety.

_____
D. MICHAEL SWINEY, JUDGE

---

[3] As of the date of this opinion, no Tenn. R. App. P. 11 application for permission to appeal had been filed, but the time for filing the Rule 11 application had not yet expired.